```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
MARCUS BAIN,                             :
                    Plaintiff,           :
                                         :
           -v-                           :    09 Civ. 2316 (DLC)
                                         :
CORRECTION OFFICER S. VELEZ,             :
CORRECTION OFFICER J. SINGLETARY and     :    OPINION & ORDER
CORRECTION OFFICER "JANE" MERRITT,       :
                                         :
                    Defendants.          :
                                         :
-----------------------------------------X
```

Appearances:

For Plaintiff:
Cynthia H. Conti-Cook
Stoll, Glickman & Bellina, LLP
71 Nevins Street
Brooklyn, NY 11217

For Defendants:
Inna Reznik
State of New York
Office of the Attorney General
120 Broadway, 24th Floor
New York, NY 10271

DENISE COTE, District Judge:

Plaintiff Marcus Bain ("plaintiff" or "Bain") filed this action under 42 U.S.C. § 1983 alleging that defendants used excessive force against him on January 5, 2008, while plaintiff was incarcerated at Sing Sing Correctional Facility ("Sing Sing") in the custody of the New York Department of Correctional Services ("DOCS"). Defendants move to dismiss the lawsuit pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c)

on the grounds that plaintiff failed to exhaust his remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  For the reasons stated below, defendants' 12(b)(6) and 12(c) motions are converted into a motion for summary judgment, and defendants' motion for summary judgment is granted.

## BACKGROUND

The facts below, taken from the complaint and the parties' additional evidentiary submissions, are either undisputed or presented in the light most favorable to the plaintiff.  On January 5, 2008, at approximately 7:00 pm, plaintiff was caught wearing too many clothes by prison officials and directed to stand in a holding area known as the "red box."  Plaintiff asserts that corrections officers then hit him with their fists and a baton and kicked him after he fell to the ground.  Plaintiff suffered a laceration to his forehead that required sutures and bruising to his face, eyes, arms, back, and shoulders.  Defendants admit that the altercation occurred and that the plaintiff sustained injuries.

After the incident, Bain was escorted to Sing Sing's infirmary and then transported to Mount Vernon Hospital for additional medical treatment.  After being treated overnight in

the hospital, plaintiff returned to Sing Sing on January 6 and was held in the infirmary.

On January 7, while still in the infirmary, plaintiff wrote a "grievance letter" to the Inmate Grievance Review Committee ("IGRC") complaining about the force used against him during the January 5 incident. Plaintiff submitted this letter to the corrections officer assigned to the infirmary. Plaintiff followed up about the grievance with Captain Brereton on January 7 and 8 during his daily rounds. On January 9, plaintiff was discharged from the infirmary and transferred to the special housing unit ("SHU").

Before leaving the infirmary, plaintiff was charged with four infractions: "Violent Conduct," "(Attempted) Assault on Staff," "Refusing a Direct Order," and "Obscene Language." Plaintiff maintains that these charges were false and filed in order to conceal the officers' excessive use of force. In order to assist him in responding to these charges, plaintiff was given various documents, including a "use of force" report by Sgt. D. Mahunik, statements from corrections officers involved in the incident, and photographs taken of Bain while he was in the infirmary. On January 17, a disciplinary hearing, known as the "Superintendent's Hearing," was held. The plaintiff testified that excessive force had been used to subdue him during the incident and that the disciplinary charges were

3

fabricated, but did not mention his January 7 grievance letter to the IGRC.

On January 29, the Hearing Officer issued a four-page hearing disposition.  The disposition included a detailed statement of the evidence, a decision regarding the plaintiff's guilt on each charge, and a short statement of reasons for the disposition.  The Hearing Officer concluded that Bain had "engaged in behavior that posed a serious threat to the safety, security and order of th[e] facility" and found him guilty of "Violent Conduct" and "Refusing a Direct Order," but not guilty of the other charges.  Plaintiff was sentenced to 25 days (or time served) of SHU confinement; 2 months of "keep-lock" confinement without recreation; and 90 days' loss of telephone, package, and commissary use.

On January 30, plaintiff appealed to the DOCS Commissioner. On his appeal form, plaintiff asserted five grounds for review. The plaintiff complained that his hearing was not timely; that the Hearing Officer misrepresented on the record whether the hearing had previously been adjourned; that the plaintiff did not have enough time to prepare his defense; that his assistant's pre-hearing help was inadequate; and that the Hearing Officer acted inappropriately by investigating the acts involved in the misbehavior report.  The plaintiff did not mention his January 7 grievance on the appeal form, however, nor

4

did he note the failure of the Superintendent to respond to that grievance.  On March 17, 2008, the Director of Special Housing/ Inmate Disciplinary Program affirmed the Hearing Officer's findings.  By that time, plaintiff had been transferred to Clinton Correctional Facility in Dannemora, New York.

On March 12, 2009, plaintiff filed this complaint under 42 U.S.C. § 1983, alleging that defendants' use of excessive force, and subsequent filing of disciplinary charges against him, violated the Eighth and Fourteenth Amendments.  Plaintiff also asserts pendent state law claims of assault, battery, and negligence.  Plaintiff's complaint states, as support for his exhaustion of remedies, that "Plaintiff filed a grievance at Sing Sing Correctional Facility without receiving a decision."

On November 6, defendants filed a joint motion to dismiss and motion for judgment on the pleadings on the grounds that plaintiff failed to exhaust his remedies.  The motion became fully submitted by defendants' letter reply of December 23.

## DISCUSSION

### I. Conversion to Motion for Summary Judgment

Federal Rule of Civil Procedure 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule

5

56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  In light of the parties' submissions, which include affidavits, administrative records, and other evidentiary material, it is appropriate to convert defendants' motion to one seeking summary judgment.  See Global Network Commc'ns, Inc. v. City of N.Y., 458 F.3d 150, 155 (2d Cir. 2006).  A district court must ordinarily give notice to the parties before converting a motion to dismiss into a motion for summary judgment, see Hernandez v. Coffey, 582 F.3d 303, 307 (2d Cir. 2009), but a party "is deemed to have notice that a motion may be converted . . . if that party should reasonably have recognized the possibility that such a conversion would occur."  Sira v. Morton, 380 F.3d 57, 68 (2d Cir. 2004) (citation omitted).  Where a represented party attaches to a motion to dismiss or to his opposition thereto "extensive materials that were not included in the pleadings," they "plainly should [be] aware of the likelihood of" conversion, and "cannot complain that they were deprived of an adequate opportunity to provide the materials they deemed necessary to support their" position.  Id.  That is the case here with respect to the issue of exhaustion.

Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts "in the light most favorable" to the nonmoving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Holcomb v. Iona Coll., 521 F.3d 130, 132 (2d Cir. 2008). Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set out specific facts showing a genuine issue for trial," and cannot "rely merely on allegations or denials" contained in the pleadings.  Fed. R. Civ. P. 56(e); Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  That is, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Moreover, only disputes over material facts -- "facts that might affect the outcome of the suit under the governing law" -- will properly preclude the entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Roe v. City of Waterbury, 542 F.3d 31, 35 (2d Cir. 2008) (quoting Anderson). In other words, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  Anderson, 477 U.S. at 247-48.

II.  Exhaustion Under the PLRA

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies <u>as are available</u> are exhausted."  42 U.S.C. § 1997e(a) (emphasis added).  "'There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.'"  <u>Johnson v. Rowley</u>, 569 F.3d 40, 45 (2d Cir. 2009) ("<u>Rowley</u>") (quoting <u>Jones v. Bock</u>, 549 U.S. 199, 211 (2007)).  This prerequisite applies to "all 'inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'"  <u>Davis v. Barrett</u>, 576 F.3d 129, 132 (2d Cir. 2009) (quoting <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002)).  "[F]ailure to exhaust is an affirmative defense under the PLRA," and "[c]ompliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  <u>Jones</u>, 549 U.S. at 216, 218.  "All 'available' remedies must . . . be exhausted," not just those that are "plain, speedy, and effective," <u>Porter</u>, 534 U.S. at 524 (citation omitted), and "[p]risoners must utilize the state's grievance procedures regardless of whether the relief sought is offered through those procedures."  <u>Espinal v. Goord</u>, 558 F.3d 119, 124 (2d Cir. 2009).  To determine whether a prisoner has

exhausted his remedies, the court must "look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." Id.  Where the prison's procedures permit appeal of an adverse ruling, to exhaust the available procedures a prisoner must file an appeal. In other words, an inmate must use "all steps that the agency holds out."  Woodford, 548 U.S. at 90 (citation omitted).

The Second Circuit has held that an inmate's failure to exhaust may be excused if administrative remedies are effectively unavailable; if a defendant should be barred by estoppel from raising exhaustion as a defense; or if other such "special circumstances" warrant excusal.  Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004).  Since Hemphill, however, it has become clear that "'the PLRA exhaustion requirement requires proper exhaustion.'"  Espinal, 558 F.3d at 124 (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  Woodford, 548 U.S. at 90-91. Whether the Hemphill exceptions survive Woodford's holding requiring "proper exhaustion" remains unclear.  See Macias v. Zenk, 495 F.3d 37, 43 n.1 (2d Cir. 2007) (declining to "decide

what effect Woodford has on Hemphill's holding"); Ruggiero v. County of Orange, 467 F.3d 170, 175-76 (2d Cir. 2006) (same).

DOCS addresses inmate grievances through its Inmate Grievance Program ("IGP"). See 7 N.Y. Comp. Code R. & Regs. pt. 701. First, an inmate must file a grievance with the IGP clerk at the facility where the inmate is housed within 21 calendar days of the incident. Id. § 701.5(a)(1). Grievances alleging employee harassment, including the use of excessive force, are subject to an "expedited procedure" whereby the grievance is immediately logged by the IGP clerk and forwarded to the facility superintendent the same day. Id. §§ 701.2(e), 701.8(b); see also Espinal, 558 F.3d at 125-26 (describing the expedited procedure for harassment grievances). The superintendent is charged with promptly determining "whether the grievance, if true, would represent a bona fide case of harassment." Id. § 701.8(c). If so, the superintendent must either request an investigation by the state police or inspector general's office or "initiate an in-house investigation by higher ranking supervisory personnel into the allegations contained in the grievance." Id. § 701.8(d). The superintendent must then render a decision on the grievance within 25 calendar days of its receipt, with time extensions allowable only with the grievant's consent. Id. § 701.8(f). After the superintendent renders a decision, the grievant has 7

10

calendar days to appeal the decision to the Central Office Review Committee ("CORC").  Id. § 701.8(h).  If, however, the superintendent fails to respond within 25 calendar days, "the grievant may appeal his/her grievance" to CORC "by filing a notice of decision to appeal (form #2133) with the inmate grievance clerk."  Id. § 701.8(g).

The parties dispute whether the plaintiff filed a grievance concerning the January 5, 2008 incident.[1]  Assuming plaintiff did file a grievance, however, it is nonetheless undisputed that plaintiff did not attempt to appeal the superintendent's lack of response to CORC in accordance with § 701.8(g).[2]  In choosing not to appeal to the CORC the superintendent's unresponsiveness to

---

[1] Defendants argue in their moving papers that "[a]lthough plaintiff's complaint alleges that he filed a grievance, the complaint does not attach a copy of the grievance, the grievance number, or any other documentation establishing that he filed a grievance in connection with the January 5, 2008 incident."  In support of this conclusion, defendants submit a declaration by Frank Robinson ("Robinson"), the Inmate Grievance Program Supervisor and custodian of grievance files at Sing Sing.  Attached to Robinson's declaration is a record of all grievances filed by Bain during his time at Sing Sing; the record does not include any grievances filed in January 2008.

[2] Defendants attach a declaration by Karen Bellamy ("Bellamy"), Director of the Inmate Grievance Program at DOCS and custodian of the records maintained by the CORC, which reports that a search of CORC's records for grievance appeals by plaintiff did not reveal any appeals related to "the denial of any grievance about a January 5, 2008 excessive force incident."  Attached to Bellamy's declaration is a list of nine CORC appeals made by the plaintiff, the earliest of which was filed in March 2000 and the latest of which was filed in May 2006.

11

his grievance, plaintiff failed to "properly exhaust" his remedies as required by the PLRA.  Woodford, 548 U.S. at 101.

In response, plaintiff acknowledges his failure to exhaust, but claims that the exhaustion requirement should be excused because he reasonably, if erroneously, believed that his disciplinary appeal exhausted his administrative remedies as to his January 7 grievance.  Plaintiff claims that the investigation conducted by prison officials preceding the January 17 hearing had been sufficient to "afford [the prison] time and opportunity to do an exhaustive investigation" and to "alert[] the prison to the nature of the wrong for which redress is sought."  As such, plaintiff claims it was reasonable to believe he did not need to "separately appeal to the Commissioner's office regarding the Superintendent's unresponsiveness to his grievance."

Even assuming that the "special circumstances" exception survives Woodford, however, plaintiff has not "plausibly alleged" the existence of "special circumstances . . . that [would] justify [his] failure to comply with administrative procedural requirements."  Macias, 495 F.3d at 41.  Bain did not attempt to use the disciplinary appeal process to further press his claims.  While the plaintiff's appeal of January 30, 2008 asserted five issues for review, all five of those grounds related to alleged procedural defects with the disciplinary

12

hearing, not to the plaintiff's substantive claims of excessive force or false disciplinary charges. It is therefore not plausible to argue, as Bain does, that "[p]laintiff was reasonable in believing that his appeal of the Superintendent's disciplinary hearing was the proper procedural vehicle for exhaustion" when the appeal filed by plaintiff himself made no mention whatsoever of the basis of plaintiff's federal claims. Because the plaintiff did not properly exhaust his remedies, his claims must be dismissed.

## CONCLUSION

The defendants' November 6, 2009 motion for summary judgment is granted. The Clerk of Court shall enter judgment for the defendants and close the case.

SO ORDERED:

Dated:   New York, New York
         February 19, 2010

_____
DENISE COTE
United States District Judge